IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THERESA HUMPHRYS,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

    Defendant.

3:17-CV-00395-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

    Plaintiff Theresa Humphrys protectively filed this action March 10, 2017, seeking judicial review of the Commissioner of Social Security's final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"). This court has jurisdiction over Humphrys' action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

Humphrys argues that the ALJ erred in (1) evaluating the opinions of two treating medical sources; and (2) assessing the credibility of her symptom allegations. I have considered the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's final decision should be reversed, and this case remanded for further proceedings.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

---

[1]Effective March 27, 2017, updates were made to the regulations. Some C.F.R. sections referenced have been renumbered and the citations listed here are the versions of the C.F.R. that were in effect at the time Humphrys requested judicial review.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(iii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-54. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Id.*, *quoting* Social Security Ruling ("SSR") 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§

404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and continuing basis,[2] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.9520(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national

---

[2] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

Page 4 - OPINION AND ORDER

economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g). If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id., quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent

findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

## SUMMARY OF ADMINISTRATIVE RECORD

Humphrys was born February 18, 1958. Tr. 88.[3] Humphrys graduated from high school. Tr. 200. Prior to her alleged disability onset date of December 17, 2012, Humphrys worked as a cashier and as an assistant manager. Tr. 32.

Humphrys' lumbar spine was x-rayed on May 1, 2015. The results were compared to an earlier image from March 30, 2011. The imaging was interpreted as showing "mild degenerative facet arthritis . . . affecting the lower lumbar vertebral bodies, predominantly at L5-S1. These [sic] subtle disc space narrowing at L4-5, likely due to mild disc degeneration, is unchanged." Tr. 452.

Treating chiropractor Neil McMahon, R.N., D.C., completed a worksheet assessment prepared by Humphrys' attorneys on May 6, 2015. Tr. 385-88. He indicated he had treated her for ten years for various neck and back pain. Tr. 388. McMahon opined that Humphrys could lift 20 pounds occasionally and 10 pounds frequently; stand or walk for 20 minutes at a time and eight hours per day; sit for one hour at a time and eight hours total; would not be limited in

---

[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 15.

attention or concentration issues due to her symptoms; but would be expected to miss two or more workdays per month because "even simple motions can flare her back up . . . ." Tr. 387.

Treating physician Moses Gallegos, M.D., completed a worksheet assessment prepared by Humphrys' attorneys on May 20, 2015. Dr. Gallegos noted Humphrys' symptoms including low back pain, sciatica, short temper, and poor concentration and focus, among others. Tr. 486. The doctor opined that Humphrys could lift ten pounds frequently; stand or walk for 90 minutes at a time and five hours per workday; sit for 90 minutes at a time and 6 hours per workday; has "mobility stiffness" and gait disturbance; would be impaired in attention and concentration ten percent of the time; and would be expected to miss two or more workdays per month. Tr. 488.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Humphrys had not engaged in substantial gainful activity since December 17, 2012, the alleged onset date. Tr. 24. The ALJ therefore proceeded to the second step of the analysis.

At the second step, the ALJ found that Humphrys' medical impairments of "obesity, degenerative disc disease of the lumbar spine, and chronic pain syndrome" were "severe" for purposes of the Act. *Id.* Because the impairments caused by Humphrys' conditions were deemed severe, the ALJ properly proceeded to the third step of the analysis.

At the third step, the ALJ found that none of Humphrys' impairments was the equivalent of any of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1. *Id.* The ALJ therefore determined that Humphrys retained the following RFC:

> [C]laimant has the [RFC] to perform light work . . . except the claimant can lift 20 pounds occasionally and 10 pounds frequently . . . can carry 20 pounds occasionally and 10 pounds frequently . . . can sit for up to 6 hours in an 8 hour work day . . . can stand or

>       walk 6 hours in an 8 hour work day . . . can push or pull as much as
>       the claimant can lift or carry . . . can occasionally climb ramps or
>       stairs . . . [and] would be precluded from climbing ladders or
>       scaffolds. The postural activities of stooping, kneeling, crouching,
>       and crawling would be limited to the frequent level.

Tr. 27.

At the fourth step, the ALJ found that Humphrys was able to perform her past relevant work as a cashier and as an assistant manager. Tr. 32. Accordingly, the ALJ found Humphrys was not disabled. Tr. 33.

Humphrys timely requested review of the ALJ's decision, and the Appeals Council denied her request on January 12, 2017. Tr. 1-3. The ALJ's decision of June 23, 2015 thus became the Administration's final order for purposes of judicial review. *See* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This action followed.

## ANALYSIS

Humphrys argues that the ALJ: (1) failed to provide legally-sufficient rationales to reject the opinions of two treating medical sources; and (2) failed to provide legally-sufficient rationales to discredit her symptom testimony.

### I.   Medical Source Opinions

Humphrys assigns error to the ALJ's rejection of the medical opinion of her treating physician, Dr. Gallegos, and the opinion of her treating chiropractor, Mr. McMahon. To reject the uncontroverted opinion of a treating or examining physician, an ALJ must articulate "clear and convincing reasons" for doing so. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester*, 81 F.3d at 830-31). If a treating or examining physician's opinion is in conflict with substantial evidence or with another physician's opinion, however, it may be rejected for merely "specific and legitimate reasons." *Id.* Non-physician medical sources, such as

chiropractors, are defined as "other" sources under the regulations. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). Because "other" sources are accorded less deference than the opinions of physicians, the ALJ's reasons for rejecting such testimony must only be germane to the source. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Otherwise, "other" source testimony is considered "competent evidence that an ALJ must take into account." *Id.*

*A. Dr. Gallegos*

The ALJ provided three reasons to reject the opinion provided by Dr. Gallegos. First, the ALJ found that Dr. Gallegos attributed Humphrys' limitations to back pain, despite only mild findings in the medical imaging; second, that the report Dr. Gallegos completed was prepared by Humphrys' attorney; and third, the lifting limitation the doctor assessed was inconsistent with her ability to grocery shop. However, on review, none of the ALJ's findings met the requisite legal standard.

Contrary to the ALJ's finding, Dr. Gallegos indicated that Humphrys' diagnoses included "degenerated lumbar disc and sciatica," which was consistent with the ALJ's own finding that Humphrys' severe impairments included "degenerative disc disease of the lumbar spine." *Compare* Tr. 24 *with* Tr. 486. To the extent the ALJ found Humphrys' degenerative disc disease a severe impairment, the ALJ's assertion that Dr. Gallegos' assessment was invalid because it attributed work limitations to back pain was internally inconsistent.

Moreover, insofar as the ALJ discredited Dr. Gallegos' opinion because the medical imaging revealed "only mild findings," the ALJ's rationale was invalid. Although the x-rays in question were interpreted as showing "mild degenerative facet arthritis," the imaging nevertheless supported the diagnosis set forth by Dr. Gallegos – a diagnosis which was

essentially adopted by the ALJ. In discrediting the doctor's opinion as to the severity of Humphrys' limitations because x-ray imaging showed only mild degenerative arthritis, the ALJ essentially required Humphrys to establish objective medical evidence of her pain symptoms. It is error, however, to require a claimant, or, by extension, a claimant's treating physician, to demonstrate objective evidence of the severity of pain symptoms, because pain is "subjective and difficult to quantify." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see, e.g., Potter v. Comm'r of Soc. Sec.*, 571 Fed. App'x 569, 571 (9th Cir. 2014). Absent other valid reasons for discrediting pain symptoms, a lack of supporting objective evidence alone is insufficient. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

The ALJ also erred in rejecting Dr. Gallegos' opinion because his assessed ten-pound lifting limitation was inconsistent with Humphrys' ability to grocery shop. Tr. 33. The ALJ cited no evidence in support of his finding that Humphrys lifts more than ten pounds when she grocery shops. Although Humphrys' daughter indicated she is able to shop for groceries and essentials twice per month, the evidence cited by the ALJ did not provide any information about the lifting activity it involved. *See* Tr. 241. The Commissioner's argument in support of the ALJ is equally unavailing: even if shopping for three to four hours at a time likely entails more than picking up "a few items," there is no evidence that shopping requires lifting more than ten pounds at a time, up to one-third of a workday. The mere fact that Humphrys is able to go grocery shopping, without more, does not constitute a specific-and-legitimate reason to discredit Dr. Gallegos' assessment of her lifting ability. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (holding that the fact that a claimant could perform childcare activities, without specific information about what those activities entailed, was insufficient to reject her testimony).

Finally, the ALJ erred to assume that because the worksheet Dr. Gallegos completed was generated by Humphrys' attorney, it suggested bias. The Ninth Circuit has long held that an ALJ "may not assume that doctors routinely lie in order to help their patients collect disability benefits." *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (*quoting Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995)). The ALJ provided no facts to support his position that the doctor or the form was inherently biased, and the Commissioner declines to set forth any argument along those lines. Accordingly, the finding was erroneous.

*B.     Mr. McMahon*

The ALJ purported to accord partial weight to the opinion provided by treating chiropractor Mr. McMahon, noting that Mr. McMahon had a longstanding relationship with Humphrys, was "well aware of the claimant's limitations and is in a position to render a reliable a credible opinion." Tr. 30. The ALJ further noted that Mr. McMahon's opinion "is not overly exaggerated." *Id.* Despite those findings, the ALJ limited the weight accorded to Mr. McMahon's opinion because the chiropractor's hypothesis that Humphrys' condition would continue to degenerate was not borne out by the record, based on the mild x-ray findings which were essentially unchanged since 2011. *Id.*

The ALJ's finding was erroneous. Even if Humphrys' condition did not deteriorate as Mr. McMahon predicted, there is certainly no indication in the record that Humphrys' condition improved after the assessment was completed in May 2015. Accordingly, the reason proffered by the ALJ was not germane to Mr. McMahon's assessment. The Commissioner argues that the ALJ discounted the portion of Mr. McMahon's opinion which stated that "even simple motions can flair [sic] her back up and I would expect that to continue." Tr. 387. However, there is no

indication that the ALJ discounted that portion of Mr. McMahon's opinion, because the ALJ declined to make an explicit finding. At best, the argument constitutes a post-hoc rationalization which the Court may not invoke in affirming the ALJ's denial of benefits. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009).

As such, none of the rationales provided by the ALJ for rejecting the opinions of Dr. Gallegos or Mr. McMahon were legally valid on this record.

## II. Symptom Testimony

The Ninth Circuit established two requirements for a claimant to present credible symptom testimony: the claimant must produce objective medical evidence of an impairment or impairments; and must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's testimony only if the ALJ provides clear and convincing reasons for doing so. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). General assertions that the claimant's testimony is not credible are insufficient. *Id.* The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (*citing Lester*, 81 F.3d at 834). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). However, even if not all of the ALJ's findings for discrediting symptom allegations are upheld,

the overall decision may still be upheld, assuming the ALJ provided other valid rationales. *Batson*, 359 F.3d at 1197.

The ALJ found Humphrys' symptom allegations lacked credibility, in part, because she pursued minimal treatment. Tr. 26. Although minimal treatment may undermine allegations of debilitating pain, however, a claimant may rebut the finding by establishing good cause for not seeking more extensive treatment. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Here, Hymphrys testified that there were several reasons that she had not sought more treatment for her back. First, she explained that at the time of her initial back injury in 1982, she was declaring medical bankruptcy in order to provide care for a child with a serious illness. Tr. 47. She explained that she elected to care for her child rather than pursue back surgery for herself, and that her back pain progressively worsened thereafter. *Id.* Humphrys further explained that she eventually had a series of nerve block procedures, which initially provided relief but ultimately stopped providing relief. Tr. 48-49. Humphrys also explained that in the past, she took excessive amounts of Percocet and Fentanyl to deal with pain, and eventually was weaned off of narcotic pain medication. Tr. 49-50. Finally, Humphrys explained that, over time, she has learned to position her body so as not to aggravate her back pain, and that since she stopped working, she has the opportunity to avoid activities that are problematic for her. Tr. 50-52.

Despite Humphrys' detailed explanation of why she no longer pursued more aggressive treatment methodologies, the ALJ failed to address any of her relevant testimony. As such, the ALJ erred in finding Humphrys' symptom allegations were belied by conservative treatment. *See Trevizo*, 871 F.3d 679-80 (ALJ erred by failing to address claimant's proffered reasons for declining to take narcotic pain medication). Although the Commissioner argues that Humphrys'

testified that her pain was under control or improved, she continued to endorse the allegation that incorrect movements and workplace activity was likely to cause her pain to flare, which was consistent with the erroneously discredited opinion of treating chiropractor Mr. McMahon. *See* Tr. 387 (simple motions can cause back pain flares). Moreover, as noted above, Humphrys stated she was better able to handle her back pain because she was at home and able to moderate her activity level. Although there may be reasonable bases for rejecting these allegations, the ALJ failed to provide sufficiently specific rationales in his decision.

The ALJ also found that Humphrys' credibility was impugned by statements she made at the hearing which were inconsistent with prior statements regarding her reported daily activities. Tr. 31. Specifically, the ALJ noted that at the time of the hearing in May 2015, Humphrys indicated that she does not grocery shop due to back pain, and because her husband is more knowledgeable about what their household requires. *Id.* The ALJ found the testimony contradicted information Humphrys provided in her application materials, which indicated she was able to shop in stores, as well as statements provided by her daughter that she grocery shops twice monthly for three to four hours. *Id.*

However, viewing the record as a whole, the Court does not find a material inconsistency, chiefly because Humphrys provided her application materials two years prior to her testimony. Accordingly, even assuming Humphrys' accounts of grocery shopping vary over time, there is no indication that she provided conflicting reports about the same time period. The purported inconsistency is even less convincing considering that Humphrys alleges that her back pain has worsened over time. The clear-and-convincing legal standard is "the most demanding required in Social Security cases," and such a minor aberration in testimony simply does not meet that

standard. *Garrison*, 759 F.3d at 1015. Further, while inconsistent statements may impugn credibility, "a single discrepancy fails to justify . . . the wholesale dismissal of a claimant's testimony." *Popa*, 872 F.3d at 906-07 (*citing Robbins*, 466 F.3d at 883-84). The ALJ's credibility finding cannot be affirmed. I additionally note that the Commissioner declined to defend the ALJ's evaluation of the purported inconsistent statements regarding Humphrys' capacity to grocery shop. The ALJ's finding was erroneous.

### III.   Remand for Payment of Benefits

For the reasons discussed herein, the ALJ's decision did not provide legally sufficient reasons to reject the opinions of two treating medical sources or for rejecting Humphrys' symptom allegations. Accordingly, the sole remaining issue is to determine whether to remand for further proceedings or for immediate payment of benefits. The decision to remand for further proceedings turns upon the likely utility of such proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). While the typical course is to remand for further proceedings, the Ninth Circuit has repeatedly credited evidence as true when the ALJ failed to provide clear and convincing reasons for discounting the testimony of a plaintiff or a medical provider. *See, e.g., Garrison*, 759 F.3d at 1022-23; *Orn*, 495 F.3d at 640; *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). A court "should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits" when the follow conditions are met: "(1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are not outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the [plaintiff] disabled were such evidence credited." *Benecke*, 379 F.3d at 593.

The first prong of the credit-as-true test is met by virtue of the ALJ's errors in evaluating the medical opinions of Dr. Gallegos and Mr. McMahon, as well as the erroneous credibility determination regarding Humphrys' symptom allegations.

The Commissioner argues that the second prong of the credit-as-true test is not met, however, because "the ALJ would need to resolve the conflicts between Plaintiff's testimony and the opinions of the acceptable medical sources who found [Humphrys] capable of sustaining competitive employment," presumably referencing the non-examining physicians who provided reviews of the medical record and determined that Humphrys was not disabled. Def.'s Br. 10-11.

Considering the record as a whole, the Court agrees that a number of conflicts and ambiguities in the record raise serious doubt about whether Humphrys is, in fact, disabled. For example, although Dr. Gallegos opined that she would likely miss two or more workdays per month, he based his opinion on "limited sitting, need for narcotic pain medication, poor concentration, and short temper." Tr. 488. However, Dr. Gallegos also opined that Humphrys could sit for six hours per day and would only be off-task 10% of the time, both of which are consistent with the ALJ's RFC finding. Tr. 27, 62. Further, Humphrys testified that she no longer uses narcotic pain medication, because over-the-counter treatment is effective, and there is little evidence of record of any anger issues, aside from her own statements.

Similarly, although Mr. McMahon felt that Humphrys would likely miss two or more days per month due to back pain flares, there is little evidence of record regarding the frequency and severity of her flares. Morevoer, Mr. McMahon's opinions that Humphrys' pain symptoms would not impair her concentration and focus, and that she would be able to sit for up to eight hours per day, appears at least potentially inconsistent with his opinion that she would likely have

excessive absenteeism.

Finally, although the Court finds that the ALJ erred in failing to address Humphrys' proffered reasons for not seeking more extensive treatment for her back, the Court retains a degree of skepticism about why, despite her allegations of worsening symptoms, Humphrys had not sought treatment for her back for three years leading up to the administrative hearing. Tr. 45-46.

Accordingly, the Court finds that issues of fact remain unresolved, so further proceedings are appropriate. Even if all the prongs of credit-as-true were met, however, the Ninth Circuit has clarified that courts must "remand for further proceedings when . . . an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021. Such is the case here – the mere fact that an ALJ's decision included reversible error does not necessarily direct a reward of benefits. The Court, therefore, exercises its discretion in remanding this case for further proceedings consistent with this opinion.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying Humphrys' application for disability insurance benefits and supplemental security income is reversed and remanded for further proceedings.

Dated this 2nd day of April, 2018.

Honorable Paul Papak
United States Magistrate Judge